HERBERT L. HARDING *vs.* FRANK M. FORBUSH, administrator.

Middlesex. November 24, 1911. — January 2, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Guardian*, Accounts. *Res Judicata. Judgment. Executor and Administrator. Interest. Tax.*

A woman, who had been under guardianship as an insane person, died and an administrator of her estate was appointed who contested an account filed by the guardian on the ground that it contained an overpayment of $1,000 to a caretaker of the insane person. It appeared that the overpayments were due to a clerical error of the guardian, but that during the lifetime of the ward the caretaker had denied that she was overpaid and, contending that a larger sum was due her, had brought an action against the ward about three months before her death and over three years after the guardian's account above referred to had been filed, and that the guardian on behalf of the ward accepted service of the writ therein. There were hearings in that action before an auditor who reported adversely to the claim of the caretaker. After the death of the ward the administrator, with full knowledge of the overpayment to the caretaker and without consulting the guardian and without his assent, agreed to an entry of judgment for the caretaker for $1,000 while the contest over the account of the guardian was pending in the Probate Court and paid a sum of money to her in settlement of the action. The Probate Court charged the guardian with the overpayment, which action on appeal was confirmed by a single justice of this court. *Held*, that the guardian, not being a party to the action originally brought by the caretaker against his ward and afterwards continued against the ward's estate as represented by the

administrator, could not maintain that the propriety of his payments to the care-taker had become *res judicata* through the settlement of that action by a judgment for and a payment to the caretaker.

An overpayment by a guardian to a caretaker of his ward, which was made in good faith under the circumstances of this case, was held not to warrant charging the guardian in his accounts with compound interest on the sum so overpaid.

If, after the appointment of a guardian of an insane person and the giving of a bond by him for $1,000, the estate is increased by over $23,000, and, for the purpose of avoiding an increase of taxation of the estate, the guardian does not file a new inventory or render any account, no loss to the ward's estate resulting, although such conduct is a breach of duty owed by the guardian to the public and as such is to be condemned, it furnishes no reason for denying to the guardian such compensation as he may have earned for his other services to the estate of the ward.

APPEAL from a decree of the Probate Court upon the first account of Herbert L. Harding as guardian of the estate of Cornelia Phelps, late of Somerville.

The account was filed on June 1, 1903, and covered a period from December 14, 1897, to May 1, 1903, and contained in schedule A items amounting to $35,012.24, in schedule B items amounting to $18,091.76, and in schedule C items amounting to $16,920.48. Among the items of schedule B were items of payments amounting to $6,700 for services of the guardian, others of payments to Austin and Hay, Esquires, attorneys employed by the guardian amounting to $1,029.25, and others of various payments to Mrs. Cornelia F. Covell for services as caretaker and for expenses, board and lodging.

In the Probate Court the account was objected to by various presumptive heirs of the ward and was referred to an auditor on June 15, 1903. On December 20, 1906, the ward died and later the respondent was appointed administrator of her estate. In the Probate Court the auditor filed his report on February 10, 1909, and on July 2, 1909, *Chamberlain*, J., made a decree disallowing $3,200 of the guardian's charges for services and charging the guardian with $1,306.48, as overpayments to Mrs. Covell.

On appeal from the Probate Court, the case was referred to Frank W. Kaan, Esquire, as master. His report among other findings contained the following:

In 1896 Cornelia Phelps of Somerville was over eighty years of age, lame and unable to leave her home or even to go up and down stairs. She was easily influenced by persons whom she liked. She had no property of her own and for several years

had been supported by an aunt, who died in that year leaving an estate of about $90,000 and a will giving her only $8,000, while practically all of the residue of the estate was given to one Fitch.

Herbert L. Harding, Esquire, the guardian, had been engaged in the practice of law in Boston since 1877. He was consulted in August, 1897, about the affairs of Cornelia Phelps. He called at her house in Somerville and her affairs were laid before him. Thereafter he rendered various services in controversies with John S. Patton, Esquire, who formerly had acted in a fiduciary capacity for the ward, with Fitch, executor of the estate of the ward's aunt, with a young man who with Mr. Patton's approval had received $5,000 as a gift from his ward, and in an advisory and conciliatory manner as to his ward's daily life and surroundings.

In July, 1899, the guardian received from the estate of the ward's aunt $23,338.94. He did not have his bond increased and filed no inventories or accounts in the Probate Court and sought no authority for a payment of fees to himself, because he desired not to disclose the size of the estate and thus to avoid taxation of the estate.

It appeared that, through a clerical error, Mrs. Covell had been overpaid by the guardian in the sum of $1,000. She, as found by the master, "denied that the guardian had overpaid her, and made a further claim on him for earlier services rendered Miss Phelps. This claim was not assented to by Mr. Harding. He took the position that what might be due her, if anything, should be determined by legal proceedings. Accordingly," on October 13, 1906, " she brought an action on the claim against Miss Phelps while Mr. Harding was guardian " and he accepted service of the writ on behalf of the defendant. " This action, after hearings before an auditor and a report by him adverse to the claim of Mrs. Covell, was disposed of " on January 18, 1909, by an agreement for judgment for the plaintiff for $1,000 made between the plaintiff's attorney and Mr. Patton as attorney for the administrator of the estate of Cornelia Phelps, as allowed by the court. The respondent "paid Mrs. Covell in settlement of her claim a certain sum of money, with the approval of the heirs at law of Miss Phelps, and with

knowledge on his part and on their part of the above mentioned overpayment to her by Mr. Harding. The administrator made this settlement without consulting Mr. Harding and without his assent thereto. The action so disposed of was brought to recover a sum additional to all that the guardian had paid Mrs. Covell. At the request of the guardian I find as a fact that the claim of Mrs. Covell, on which her said action was based, was in existence against Miss Phelps while the latter was under the guardianship of Mr. Harding. The guardian contends that this settlement relieves him from liability for the above mentioned overpayment of $1,000. On the foregoing facts I rule that I am obliged to find and I do therefore find that this contention cannot be sustained and I rule also that I am obliged to find and I do therefore find that items of payment making up the overpayment of $1,000 should not be allowed." The master also found that certain sums of payments to Mrs. Covell amounting to $1,265.38 should be disallowed.

The master found that the amounts paid by the guardian to Austin and Hay, Esquires, for services, were less than the services were worth and that the services were obtained by the guardian at the smaller cost because of the relations existing between him and Mr. Hay.

He also found: " The services rendered by the guardian during the period covered by his account were necessary and proper under the circumstances then existing and according to the information then at his command. They involved much time, labor and responsibility and related to difficult, perplexing and disagreeable matters. He took part in about three hundred consultations with the ward and her relatives, with attorneys and others, drew and examined many legal papers, conducted important litigation, studied problems of law and carried on correspondence amounting to about four hundred letters received and written. He was obliged to antagonize an old acquaintance, take part in domestic and family disputes and on important business matters, deal with persons who appear on the evidence to have been hostile, unreliable and unscrupulous. The amount of property involved and the resultant benefits were large. There was some uncertainty as to the receipt of compensation. The services were rendered with painstaking care and the high-

est degree of fidelity to the interests of the ward. I find that the sums charged in the account by the guardian for his services are fair and reasonable and should be allowed."

The master found, therefore, that, except for the disallowed payments to Mrs. Covell and interest thereon, the guardian's account was proper. He also found that payments by the guardian which he disallowed were all made in good faith, and therefore charged him only with four per cent interest from the dates when they were made.

A decree was entered by *Braley*, J., in accordance with the master's report; and both parties appealed.

The case was submitted on briefs.

*C. P. Sampson*, for the petitioner.

*J. S. Patton*, for the respondent.

SHELDON, J. 1. The petitioner objects that he ought not to be charged with the sum of $1,000, the amount of overpayments which by mistake he made to Mrs. Covell. He contends that it now appears that not only this amount, but an additional sum of another $1,000 was really due to her from the estate of his ward, because by reason of an agreement between the respondent and Mrs. Covell a judgment in her favor for that amount was entered in a suit brought by her to recover compensation for her services to the ward. But the petitioner was not a party to that suit, and after the death of his ward had no concern in defending it. There was no declaration in set-off for the overpayments. Apparently the settlement between her and the respondent was a mere compromise, a buying of his peace by the latter. But the decisive consideration is that no estoppel from the judgment rendered in that case can be invoked either for or against the petitioner as between himself and the respondent. As to him, it is not *res judicata.* It was the settlement of an independent claim made by Mrs. Covell and settled after the ward's death by the administrator of the ward's estate.

2. The findings of fact reported by the master dispose of most of the contentions made by the respondent. The petitioner should not be charged with compound interest under the circumstances here found. *Forbes* v. *Ware*, 172 Mass. 306. *McGeary* v. *McGeary*, 181 Mass. 539. *McIntire* v. *Mower*, 204 Mass. 233. The amounts charged for the services of the

guardian and of his counsel have been found to be reasonable and properly allowed. We have not the means of revising the conclusions of the master.

The guardian's neglect and delay in filing a new inventory and in rendering his account, and his concealment of the amount of his ward's estate to avoid the payment of taxes thereon, have not resulted in any loss to her estate. They were intended for its benefit, to avoid the payment of taxes which it ought to have paid. His conduct was a breach of the duty which he owed to the public, and as such is to be condemned; but it did not affect his relations to the estate, and furnishes no reason for denying him the compensation which he has earned for other services. If, as might have been the case, any penalty had been incurred for this breach of duty to the public, we need not now consider on whom such a penalty would have been made finally to rest. Nor is it for us now to animadvert upon the conduct of the respondent's counsel as that is disclosed by this record.

We find no error in the final decree entered in this court, and it must be affirmed.

*So ordered.*